UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SIMEON DESHON STATEN, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:09-CV-1838 |
| § | |
| TED ADAMS, *et al*, § | |
| § | |
| Defendants. § | |

OPINION ON DISMISSAL

While confined in the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID), Plaintiff filed this civil rights suit under 42 U.S.C. § 1983, alleging that City of Houston Police Officers Ted Adams, Anthony Hawkins, and Jeffrey Oliver used excessive force during Plaintiff's arrest, in violation of the Fourth Amendment. (Docket No. 1.) After counsel was appointed, Plaintiff filed a Fifth Amended Complaint seeking relief from Defendants Adams, Hawkins, and Oliver on a claim of excessive force and from the City of Houston for sanctioning the use of excessive force, inadequate training and screening of police officers and, alternatively, for failing to adopt a policy prohibiting the use of excessive force. (Docket No. 73-1 at 3-5). On April 8, 2013, the Court granted summary judgment for Defendants on all claims except a single claim of excessive force against Officer Adams which was retained for further proceedings. (Docket No. 93.) The sole remaining claim alleges that Defendant Adams used excessive force by striking Plaintiff with a gun during the arrest. Before the Court is Defendant Adams's Supplemental Motion for Summary Judgment on this claim (Docket no. 105), to which Plaintiff has filed a response (Docket No. 109).

For the reasons to follow, the Court will grant Adams's motion and dismiss this case in its entirety.

I. BACKGROUND

In its previous summary judgment opinion the Court summarized the general facts of this case as follows:

> The undisputed summary judgment record shows that Officer Adams observed plaintiff, who was driving a Chevy Impala, engaging in what he believed to be a drug transaction in the parking lot of an apartment complex. The car was owned by plaintiff's girlfriend, who was a passenger in the car. Adams alerted officers in a marked vehicle of the possible drug transaction and followed the car in an unmarked city vehicle. Adams observed plaintiff make several traffic violations. After plaintiff crossed three lanes of traffic, uniformed Officers Hawkins and Oliver, who were in a marked police vehicle, initiated a traffic stop by turning on their lights and siren. Plaintiff, however, ran the traffic signal and refused to stop. During the ensuing chase, the officers observed purple liquid pouring out of the driver-side window onto the ground and the side of the vehicle. Plaintiff then stopped the vehicle.
>
> Plaintiff was forcibly removed from the car, taken to the ground, and handcuffed by the officers. Adams called for an ambulance and a supervisor. Shortly thereafter, paramedics arrived; they wiped blood from plaintiff's lips and eyes where the concrete and rocks had cut him. Plaintiff declined further treatment and transportation by paramedics to a local hospital. After medical personnel at the Harris County Jail rejected his admittance because of his injuries, plaintiff was transported by other police officers to Ben Taub Hospital, where he informed medical personnel at the hospital that his mouth, jaw, and ribs hurt. Medical personnel x-rayed or scanned his jaw and gave him Ibuprofen for pain. They did not identify a problem with plaintiff's jaw but told him to return in two weeks or to follow up with a family doctor. Plaintiff was then booked in the Harris County Jail.
>
> Plaintiff entered a negotiated guilty plea to possession of cocaine and to tampering/fabricating evidence, namely codeine. As part of the plea bargain, the State dropped charges against him for evading arrest. He was convicted of the two charges and sentenced to concurrent sentences of three years confinement on October 10, 2008. After his conviction, plaintiff remained in the Harris County Jail for a few months, where his jaw was x-rayed a second time. Medical personnel at the Harris County Jail did not come up with any diagnosis but put plaintiff on a soft tissue diet for two weeks and administered pain medication. Thereafter, plaintiff was transferred to a prison unit in Huntsville, where he requested medical treatment for his back, knees, neck, and head, and psychiatric treatment for his anger issues. Medical personnel administered pain medication but

> did not attempt to identify or treat his medical issues. One doctor told him that he could have a "post-concussion" on his right side of his head. Nine months after the arrest, plaintiff filed a complaint with the City of Houston Police Department's Internal Affairs Division. The Division investigated and found insufficient evidence to prove or disprove plaintiff's allegations against the three officers of excessive force. On June 11, 2009, plaintiff filed the pending civil rights suit.
>
> Plaintiff was transferred to a prison unit in Amarillo in August 2010, where he was placed on a waiting list to see an orthodontist about jaw surgery; he was given more x-rays and pain medication. No one ever told plaintiff that his jaw was broken but a doctor told him that his jaw might have been dislocated.

(Docket No. 93 at 2-4 (internal citations omitted).)

The Court went on to find that the force used against Plaintiff, with the exception of Adams's alleged strike to Plaintiff's face with a gun, was reasonable in light of Plaintiff's resistance to being removed from the car and handcuffed. (Id. at 18-19.) Thus, the Court granted summary judgment on all claims except the claim that Officer Adams allegedly struck Plaintiff in the face with a pistol through the car window while Plaintiff had his hands up. (Id. at 30.) Regarding that claim, the Court found:

> were a jury to accept plaintiff's version of the facts that Officer Adams pistol-whipped plaintiff while plaintiff was sitting in the car with his hands up, it could conclude that such force was excessive and unreasonable to the need, even if plaintiff had failed to comply with orders to get out of the car and snatched his hands away as the officers attempted to cuff him.

(Id. at 19.) Based on this finding, the Court retained this claim for further development of the record and additional proceedings.

On December 3, 2013, Defendant Adams filed a Supplemental Motion for Summary judgment on the remaining claim against him. (Docket No. 105.) After efforts to reach a

negotiated settlement of this claim failed, Plaintiff's counsel filed a response to Defendant Adams's motion on June 5, 2014.[1]  (Docket No. 109.)

## II. LEGAL STANDARDS

### A. Summary Judgment Standard

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).  The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant.  *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

---

[1] On May 7, 2014, Plaintiff filed a *pro se* motion to dismiss his appointed counsel, citing dissatisfaction with counsel's handling of this case.  (Docket No. 106.)  Plaintiff's counsel filed an Agreed Response to the motion on May 27, 2014, denying Plaintiff's allegations and stating a willingness to continue as Plaintiff's counsel.  (Docket No. 107.)  On June 4, 2014, the Court entered an Order instructing Plaintiff to notify the Court within fifteen days if he still wished to dismiss his counsel and proceed *pro se*.  (Docket No. 108.)  Plaintiff was also given an additional forty-five days to file a *pro se* response to Adams's Supplemental Motion to Dismiss.  (Id.)  To date, the Court has not received any further response from Plaintiff.  Thus, the Court concludes that Plaintiff opted not to dismiss his appointed counsel and is satisfied with the response to the present motion.

B. Qualified Immunity

Qualified immunity is "'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 199-200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

As a public official, Adams is entitled to qualified immunity on plaintiff's § 1983 excessive force claim unless plaintiff has "adduced sufficient evidence to raise a genuine issue of material fact suggesting [Adams's] conduct violated an actual constitutional right," and the officer's "actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). "Although qualified immunity is 'nominally an affirmative defense," the plaintiff bears a heightened burden "to negate the defense once properly raised." *Newman v Guedry*, 703 F.3d 757, 761 (5th Cir. 2012). Even so, on summary judgment, the Court must look to the evidence before it in the light most favorable to the plaintiff when conducting a qualified immunity inquiry. *Id.* at 763.

C. Fourth Amendment

The right to make an arrest necessarily carries with it the right to use some degree of force or threat to affect it.[2] *Graham v. Connor*, 490 U.S. 386, 396 (1989). A claim of excessive force during the course of an arrest is analyzed under the Fourth Amendment and its reasonableness standard, which requires "two overlapping objective reasonableness inquiries." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009). A constitutional violation occurs if

---

[2] State law provides the following in pertinent part: "A peace officer . . . is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to make or assist in making an arrest or to prevent escape or assist in preventing escape after arrest." TEX. PEN. CODE ANN. §9.51(a) (Vernon 2011).

the plaintiff demonstrates (1) an injury, (2) which "resulted directly and only from a use of force that was clearly excessive to the need," and (3) the force used was objectively unreasonable. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). To state a constitutional violation, a plaintiff must first show that he suffered an injury, which resulted directly and only from the use of force that was excessive to the need. *Flores*, 381 F.3d at 396. A showing of a significant injury is no longer required in the context of an excessive force claim but a plaintiff asserting such a claim must have suffered more than a *de minimis* injury. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). Whether an injury is *de minimis* must be determined in the context in which the force was deployed. *Id.* Therefore, what constitutes a cognizable injury in an excessive force claim is subjective, "it is defined entirely by the context in which the injury arises." *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999.)

Under the aforementioned qualified immunity analysis, the Court asks whether the law lacked such clarity that it would be reasonable for an officer to erroneously believe that his conduct was reasonable. *Lytle*, 560 F.3d at 410. "The defendant's acts are held to be objectively reasonable unless all reasonable officers in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 457 (5th Cir. 2001).

### III. ANALYSIS

In its previous summary judgment opinion, the Court concluded that Defendant Adams "did not violate plaintiff's Fourth Amendment right with respect to his conduct in attempting to force plaintiff to submit to handcuffs" and, therefore, Adams was entitled to qualified immunity on any such claims. (Docket No. 93 at 19.) However, the Court further concluded that "were a

jury to accept plaintiff's version of the facts that Officer Adams pistol-whipped plaintiff while plaintiff was sitting in the car with his hands up, it could conclude that such force was excessive and unreasonable . . . ." (Id.)  Thus, the threshold question presented here is whether Plaintiff has presented sufficient evidence to support a finding that he suffered a non-*de minimis* injury which resulted directly and only from being struck with a gun by Defendant Adams.  *See Williams*, 180 F.3d at 703.  In his Supplemental Motion for Summary Judgment, Defendant Adams asserts that the record does not support such a finding.  (Docket No. 105 at 4-6.)  Adams further asserts that the record shows Plaintiff's alleged facial injuries are not consistent with being pistol-whipped and are *de minimis* given the context in which force was deployed.  Thus, Adams asserts that he is entitled to qualified immunity on this claim.

A. Evidence of Pistol-Whipping Injury

Although not specifically alleged in his Fifth Amended Complaint, Plaintiff stated in his deposition that during his arrest Officer Adams hit him in the face with a gun through the open window of the car Plaintiff was driving.[3]  Specifically, Plaintiff attested that after he stopped the vehicle and put his hands up, all three officers came to the driver's side window, which was rolled down.  Officers Adams and Oliver immediately came to the window of the car; Officer Hawkins was behind them; Oliver punched Plaintiff and Adams hit Plaintiff with Adams' gun through the open window of the car.  (Docket No. 85-3 at 7, 16.)  Although Plaintiff had his hands up, the officers screamed, "Put your hands up." (Id.)  Plaintiff told Officer Hawkins to make Oliver and Adams stop hitting him and "Officer Hawkins told them to stop or something" or hit them "and they stopped." (Id. at 7, 12.)  Plaintiff then blacked out and when he awoke, he

---

[3] In his original Complaint Plaintiff alleged that both Officer Adams and Officer Oliver (identified as John Doe #1) repeatedly punched him in the mouth with their fists and guns. (Docket No. 1.)

was lying with his nose to the ground with Officer Adams standing on his head with one foot and kicking his arms out and kicking his ribs with the other foot.  (Id. at 7-8, 10.)

Plaintiff's amended complaint alleges that he suffered "severe bodily injuries" but does not specifically identify any injury caused by Adams striking him with a gun.  (Docket No.73-1 at 3.)  In his response to Defendants' prior motion for summary judgment, Plaintiff stated that he momentarily lost consciousness from being struck in the face (although by whom or what he does not say) and when he regained consciousness he was on the ground outside the car, his head and mouth were bleeding, and his ribs hurt.  (Docket No. 88 at 4.)  In his deposition, Plaintiff summarized the physical injuries sustained in the incident as follows:

> My jaw, my head, the headaches I have, my back, my neck, my knees, the numbness in my hands and my – the pain in my hands and my – the numbness in my feet.  Like sometime I have like a burning, tearing sensation in my back or something.  My legs sometimes get numb, and when they come back, it's like a burning.

(Docket No. 85-3 at 17.)  During his deposition Plaintiff did not specifically identify an injury from being struck with a gun.  However, Plaintiff did state that his eyes and lips were bloody from cuts sustained from the concrete and rocks.  (Docket No. 85-3 at 8.)

The parties agree that following Plaintiff's arrest he had some blood on his face.  (Docket Nos. 85-2 at 13; 85-3 at 8; 85-9 at 15; 85-10 at 13-14).  However, Officer Adams attests that Plaintiff injured himself when he hit his head or chin on the pavement more than once, which was hard enough to make him bleed.  (Docket No. 85-10 at 13.)  Adams further attests that Plaintiff might have hit hard enough to cause injury to his jaw by resisting the officers' attempts to handcuff him after he was taken to the ground.  (Id. at 14.)  Adams denies that he or any other officer ever struck Plaintiff with a gun.  (Id. at 16.)  Plaintiff attests that he can't remember where the cuts to his mouth were; he just remembers that when he awoke on the ground his

mouth was sore and he couldn't talk. "It was hurting, bloody, super busted, swol [sic], so it hurt. Like my teeth had went [sic] through my lip, so it was -- it hurt to talk." (Docket No. 85-3 at 8.) Adams called for an ambulance and a supervisor because Plaintiff had been injured during the arrest. (Docket No. 85-10 at 14.) Paramedics wiped blood from Plaintiff's lips and eyes where the concrete and rocks had cut him. (Docket No. 85-3 at 8.) Plaintiff declined further treatment or transportation by paramedics to a local hospital. (Id.)

After personnel at the Harris County Jail declined to admit Plaintiff without a medical clearance, Plaintiff was transported by other police officers to Ben Taub Hospital, where he complained that his mouth, jaw, and ribs hurt. (Id. at 9.) Hospital personnel took x-rays but did not identify a problem with Plaintiff's jaw. (Id.) A second x-ray of Plaintiff's jaw at the Harris County Jail also revealed no jaw injury. (Id. at 16.) Plaintiff states that in response to his ongoing requests for pain medication an unidentified doctor at the prison unit in Huntsville stated that Plaintiff might have a "post-concussion" on the right side of his head, but no additional treatment or follow-up care was prescribed. (*Id*. at 14.) After being transferred to a prison unit in Amarillo, Plaintiff again complained of pain in his hips, hands, back and jaw and underwent additional x-rays which were inconclusive. (Id.) Plaintiff states that in Amarillo an unidentified dentist speculated that Plaintiff's jaw could have been "knocked . . . out of the rotator cuff or something" during the incident but said that Plaintiff would have to see an orthodontist for further evaluation. (Id. at 16.)

Plaintiff has not submitted copies of his medical records from any of the medical facilities where he sought treatment. However, two non-medical experts, who have viewed Plaintiff's medical records, attest that Plaintiff suffered no discernible injuries from the use of force besides minor injuries to his face. (Docket Nos. 85-4 at 5; 85-6 at 5-6; 88-5 at 5-6).

Plaintiff attests that he was also examined by medical personnel shortly before giving his deposition. (Docket No. 85-3 at 17.) Although the results of the examination are included in Plaintiff's designation of expert testimony, Plaintiff did not include the Final Report in his summary judgment response. (Docket Nos. 81-1, 109.) Moreover, the Final Report does not offer any explanation as to the possible cause of Plaintiff's injuries.[4]

## B. Sufficiency of Evidence

In its previous summary judgment opinion, the Court concluded that "Plaintiff's injuries to his face, i.e. the bloody face and lip, were consistent with the reasonable use of force." (Docket No. 93 at 18.) Specifically, the Court found that these injuries were consistent either with a reasonable fist-strike to Plaintiff's face by Officer Oliver while Plaintiff was resisting being removed from the car (id.), or by Plaintiff's face accidently striking the pavement as he was brought to the ground and handcuffed. (Id. at 15.) Despite numerous examinations by multiple independent medical facilities and personnel, Plaintiff has not presented any medical evidence to support a finding that his various claimed injuries to his jaw, head, back, neck, knees, hands or feet (Docket No. 85-3 at 17) can be directly linked to being struck in the face with a gun as opposed to some other cause.

Regarding the type and severity of injuries sustained by Plaintiff, Defendants' expert, Assistant Chief George T. Buenik, attests that:

---

[4] Plaintiff attached a copy of a medical report issued by Dr. Clark McKeever to his designation of expert witnesses, but not to his response to the original or supplemental motions for summary judgment. Dr. McKeever, who is a board certified orthopedic surgeon, indicates in the Final Report that plaintiff's chief complaints are "[m]ultiple injuries with ongoing pain involving his jaw, neck, lower back, right hip, both knees, and both hands." (Docket No. 81-1 at 2.) Dr. McKeever reports the findings from his examination and tests but does not attest to the origin or cause of Plaintiff's condition or the findings of medical experts who previously treated Plaintiff, even though he reports that he has Plaintiff's medical records from the prison units where Plaintiff was incarcerated. (Id.)

> The various medical records from three different institutions each concluded that Mr. Staten suffered no discernible injury. Furthermore, the inmate photo that was taken of Mr. Staten on October 9, 2008, at 0000 hours at the Central Jail, does not depict any visible injuries to Mr. Staten's person. Therefore, based on the provided evidence, the amount of force that Mr. Staten alleges that he received by his arresting officers is not supported by the provided medical records and/or jail photos.

(Docket No. 85-4 at 5.)  Another expert, Senior Officer Terry Bratton, attests that based on jail records, he found no evidence to support Plaintiff's claim that he was hit in the face with a firearm.  (Docket No. 85-5 at 5.)

Plaintiff's legal expert, Keith A. Howse, notes that "[m]inor injuries to a suspect can and do occur when a police officer uses force, even reasonable force, on a suspect who is resisting." (Docket Nos. 85-6 at 5; 88-5 at 5.)  Howse, who has reviewed Plaintiff's medical records, indicates that the injuries to Plaintiff's mouth "are certainly consistent with the kind of incidental injury that can occur when a suspect is forcibly taken down to the ground during apprehension." (Id.)  Although Howse also opines that the injuries are equally consistent with a situation where an officer could have used excessive force, for instance, by striking Plaintiff with "an object of some sort, including a handgun" (id.), he concludes that Plaintiff's injuries "are as consistent with those associated with reasonable force as they are with those that can be caused by excessive force."  (Docket Nos. 85-6 at 11; 88-5 at 11.)

Despite conducting independent MRI and CT scans, Plaintiff's own medical expert, Dr. Clarke McKeever, did not find that Plaintiff suffered any injury that could be attributed only to a strike with a gun.  (Docket No. 81-1.)  Instead, Dr. McKeever concluded that Plaintiff's left jaw appeared normal and that the right jaw showed only arthritic changes.  (Id. at 4.)  Dr. McKeever found no sign of a jaw fracture.  (Id.)

Based on this evidence the Court concludes that the record does not support a finding that Plaintiff sustained any injury during his arrest that can reasonably be attributed directly and only to being struck in the face with a firearm. Although Plaintiff indisputably sustained cuts and bruises to his face, the record clearly establishes that those injuries could have resulted from the reasonable use of force necessary to effectuate Plaintiff's arrest. Similarly, although the record provides scant support for Plaintiff's claim that he suffered some sort of jaw or neck injury during his arrest, even assuming such an injury occurred, it too would be consistent with the reasonable use of force under the circumstances. Because the record shows that Plaintiff's injuries, taken separately or as a whole, are entirely consistent with a reasonable use of force, a jury could not rationally conclude that any of Plaintiff's injuries resulted directly and *only* from being struck with a gun by Officer Adams.[5] *See Batiste v. Theriot*, 458 Fed. Appx. 351, 355 (5th Cir. 2012) (expert testimony did not show that injuries were direct result of tasing); *Ontiverso v. City of Rosenberg, Tex.*, 564 F.3d 379, 383 (5th Cir. 2009) (noting "at the summary judgment stage, we require evidence – not absolute proof, but not mere allegations either"); *Johnson v. Missouri City*, Civil Action No.H-07-1739, 2009 WL 6767109 *6 (S.D. Tex. Mar. 9, 2009) (no probative evidence that force caused injuries). Accordingly, Defendant Adams is entitled to summary judgment on this claim and Plaintiff's lawsuit must be dismissed in its entirety.

---

[5] Because the Court finds that the record does not support Plaintiff's causation argument, it need not address whether Plaintiff's injuries were *de minimis*.

III. CONCLUSION

Based on the foregoing, it is ORDERED that:

1. Defendant Adams's Supplemental Motion for Summary Judgment (Docket No. 105) is GRANTED.

2. All other pending motions, if any, are DENIED.

3. This case is CLOSED.

The Clerk shall provide a copy of this Order to the parties.

SIGNED at Houston, Texas, this 6th day of August, 2014.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE